OPINION

The Navajo Election Administration appeals a final decision of the Office of Hearings and Appeals that concluded initiative petitions filed by the Initiative Petition Committee were sufficient. We affirm the lower administrative agency’s determination of sufficiency.
I
A year ago this month, the Office of Hearings and Appeals (OHA) filed a petition for certification of a question to this Court as to an initiative to reduce the Navajo Nation Council (Council) from 88 to 24 delegates. In re Two Initiative Petitions Filed by Navajo Nation President Joe Shirley, Jr., No. SC-CV-41-08, 7 Am. Tribal Law 628 (Nav.Sup.Ct. July 22, 2008). We held that Council, recognizing the structure of the Navajo government is ultimately in the hands of the Navajo People, deferred to the People sole authority to change the size of Council and therefore Council may not independently amend the Election Code to alter or abolish its deference to the People. Id. With that decision, two initiative petitions were widely circulated for signatures by the Initiative Peti *264 tion Committee (IPC) to place both on the ballot to reduce the number of Council delegates from 88 to 24 (Reduction Initiative), and to provide line-item veto authority (Line-item Initiative) to the President of the Navajo Nation (President). On October 28, 2008, the President, Designated Representative of the IPC, submitted both initiative petitions to the Navajo Election Administration (NEA) for verification of the petitions. The NEA informed the IPC on November 12, 2008 that it completed its examination on November 7, 2008 and determined both petitions lacked sufficient signatures as required by law.
The Navajo Election Code states “[f]if~ teen percent (15%) of all eligible registered voters shall have signed the petition for an initiative to be placed on a ballot.” 11 N.N.C. § 404(B>(11) (2005). At the time the petitions were filed, NEA noted there were 110,202 eligible registered voters and that 16,530 constituted 15% of those registered. Petitioner’s Exhibit 1 & 2. With regard to the Reduction Initiative, the NEA reported that of the 18,638 signatures filed only 14,273 were determined to be valid and sufficient—less than the 16,-530 required by the Election Code. Id. With regard to the Line-item Initiative, the NEA reported that of the 18,002 signatures filed only 13,622 were determined to be valid and sufficient; less than the 16,-530 required by the Election Code. Id. The NEA reported that the reasons for insufficiency in both initiative petitions were lack of registration and individuals signing the petition more than once.
On November 17, 2008 the IPC, in disagreement with'the NEA’s determination of insufficiency, filed a request for a hearing with the OHA. No action was taken by OHA to schedule a hearing and OHA failed to appoint a hearing officer for more than five months before a petition for writ of mandamus and superintending control was filed with this Court on May 5, 2009. This Court issued a writ of superintending control to cause the OHA to act and to protect this Court’s appellate jurisdiction. In re Navajo Election Admin's Determination of Insufficiency Regarding Two Initiative Petitions Filed by the Navajo Nation President, Dr. Joe Shirley, Jr., No. SC-CV-24-09, 8 Am. Tribal Law 240, 2009 WL 1789113 (Navajo June 22, 2009) [hereinafter NEA’s Determination of Insufficiency Case]. We appointed Judge Carol Perry to serve in the role and capacity of a hearing officer within OHA to expedite the disposition of the matter. A final hearing was held on May 30-31, 2009 in Window Rock. On June 25, 2009, a Corrected Final Judgment was issued reversing NEA’s determination of insufficiency for both initiatives. Hearing Officer Perry concluded that “[b]oth initiatives shall be deemed sufficient to be referred to the Navajo Voters for consideration in an election to be held as soon as practicable, but not exceeding six months from the date of this order.” Corrected Final Judgment, June 25, 2009 nunc pro tunc June 24, 2009, p 34.
On July 6, 2009 the NEA, through its legal counsel, the Office of Legislative Counsel, appealed to this Court the Corrected Final Judgment. A notice of appeal, a certified copy of the final judgment, and $60.00 filing fee were filed along with a motion to waive the filing fees. On July 10, 2009 we denied NEA’s request to waive the filing fee requirement of Rules 7(a) and 7(b) of the Navajo Rules of Civil Appellate Rules (NRCAP) and accepted the filing fee previously filed with the notice of appeal.[1]
*265 On July 7, 2009 we issued an order informing the parties that this election matter will be handled expeditiously. We ordered the submittal of the record and briefs, and scheduled a hearing for July 27, 2009. The parties were also informed that a decision will be rendered by this Court no later than July 30, 2009.
On July 17, 2009 the NEA filed with this Court a motion to stay the election as ordered by the Final Corrected Judgment; this motion was filed after OHA had denied its request for a stay. This Court denied NEA’s request on July 24, 2009 because it failed to state reasons to justify a stay; NEA merely restated the merits of its appeal. The merits of an appeal, by themselves, are insufficient to justify a stay. Furthermore, a denial of a stay for thirteen days—from July 17, 2009 to July 30, 2009—will not prejudice the NEA.
The NEA, through its legal counsel, also filed a motion for disqualification of the entire Court on July 15, 2009. A hearing was held on July 27, 2009 at the Navajo Nation Museum in Window Rock and, as a preliminary matter, the Court dealt first with this motion before discussing the issue on appeal. The Court verbally announced its decision to deny the motion. This opinion follows.
II
A motion for disqualification was filed by NEA’s legal counsel on July 15, 2009 to disqualify the entire panel of this Court. As grounds, the NEA asserted that this Court, by appointing a district court judge to sit as a hearing officer within OHA (to cause OHA to act within its jurisdiction), had actively participated at the administrative hearing level. The NEA further asserted that from the Court’s language in NEA's Determination of Insufficiency Case, No. SC-CV-24-09, 8 Am. Tribal Law 240, 245-46, 2009 WL 1789113, *4, it could be gleaned that this Court already decided the outcome of this appeal and NEA will not receive a fair and impartial hearing.
Rule 16(b) of NRCAP provides “[a]ny justice muy be disqualified on motion of one of the parties or on his own motion.... The motion shall state specifically the grounds on w'hich it is based and it shall be supported by affidavit or other satisfactory evidence.” (emphasis added). To grant or deny a motion for disqualification is therefore left to the discretion of the Court. The moving party is mandated to state specific grounds supported by affidavit or other satisfactory evidence. The standard for disqualification is that there must be facts which show bias and prejudice, which influences the judge so that there may not be a fair trial. Navajo Nation v. MacDonald, 7 Nav. R. 1 (Navajo 1992). Where the judge’s impartiality might reasonably be questioned, a judge should also recuse and disqualify himself or herself. Canon Eleven of the Judicial Code of Conduct.
Upon review7 of the motion, the Court finds the NEA failed to state any facts with supporting affidavits or other satisfactory evidence to show partiality. *266 The NEA merely stated this Court appointed Judge Perry to sit as a hearing officer and had already decided this matter on appeal. This Court’s action to issue a writ of superintending control to put an end to the five-month stalemate cannot be a “fact” indicating partiality. This Court in NEA’s Determination of Insufficiency Case merely appointed a hearing officer to proceed with the verification of the initiative petitions after OHA failed to act for more than five months. This Court did not actively participate in those proceedings as asserted by the NEA and the independent decision of the appointed hearing officer as to the sufficiency of the petitions is the subject of this appeal.
The assertion of preconceived opinions—about the present matter-based on a reading of this Court’s language in our prior opinion in NEA’s Determination of Insufficiency Case, No. SC-CV-24-09, 8 Am."Tribal 'Law 240, 245-46, 2009 WL 1789113, *4 (Navajo June 22, 2009), is equally without basis as a reason for disqualification.[2] The Court’s language is a nonaligned statement about the importance of a basic and reserved right of the People to make laws. A statement of an uncontested right is not a fact showing-undue bias.
Oddly, NEA also made reference to the probationary status of two of the three justices on this Court in their motion for disqualification.
The Navajo Election Administration notes that Associates Justices Grant and Shirley are still under probationary status and under the direct supervision of Chief Justice Yazzie. 7 N.N.C. §§ 355(c) and 371. As well, the Associate Justices named are subject to evaluation by the Chief Justice. These circumstances are a concern and must be considered in fairness to the Administration.
Appellant’s Motion for Disqualification at 1, n. 1. At the hearing, NEA’s legal counsel failed to explain how a justice’s probationary status was of concern and relevant to partiality and disqualification. After counsel did not provide the Court with an adequate explanation, we informed NEA’s legal counsel that footnote 1 is unprofessional because it is not relevant to the issue of disqualification. We further informed counsel that we see these statements as innuendos to apply improper political pressure. We took these statements to imply that if the Court did not decide the matter in NEA’s favor, the probationary justices may not be confirmed by Council as permanent justices. The Court also noted the innuendo that justices, still on probationary status, may not be competent to sit on a case.
Ten years ago, this Court held that it “will not hold that a probationary judge [or *267 justice for that matter] must disqualify himself in all matters in which any person or entity involved in his tenure as probationary judge and the permanent appointment process is a party.” In re Certified Question II, No. 6 Nav. R. 105 (Nav.Sup.Ct.1989). Such a holding will defeat the intent and legislative purpose to guarantee an independent judiciary. Id. This Court will continue to protect the guarantee of an independent judiciary. Rather than submit to political pressure from the NEA’s and its counsel, we deny NEA’s motion. This type of unprofessional conduct will not be tolerated. IPC’s request for costs and attorney’s fees incurred to respond to the motion is therefore granted for these reasons.
III
The issue before the Court is limited to whether or not the decisions of the OHA are sustained by substantial evidence on the record. 11 N.N.C. § 404(B)(13)(f) (2005). An agency’s factual findings will be affirmed if “supported by substantial evidence.” This means that a “reasonable mind” would accept the evidence as adequate to support the conclusion, even if it is possible to draw two inconsistent conclusions from the evidence. Yazzie v. Took Dineh Industries, No. SC-CV-67-05, 6 Am. Tribal Law 806 (Navajo September 20, 2006); Silentman v. P & M, 8 Nav. R. 306, 4 Am. Tribal Law 644 (2003).
IV
Before we address the issue of whether the NEA’s determination of insufficiency was supported by substantial evidence, we find it necessary to first provide an overview of the NEA petition verification process. The NEA utilized the sendees of Automated Election Sendees (AES), an election management sendee, for verification of both petitions. NEA asked AES to compare its voter registration database with the names that appear on the initiative petitions to identify all registered voters. According to AES, NEA’s staff developed in Microsoft Excel a listing of census numbers, social security numbers, names, and page numbers (of where each name appeared on the initiative petitions) for each initiative by agency. AES ran a query to compare census numbers from the petitions with census numbers in the voter registration database. AES then generated a report, for both initiative petitions by agency, as to matches and non-matches. If there w'as not a match, then a “blank” area appeared for that entry. In turn, NEA provided the reports to each agency without written guidance on procedures to examine or verify which signatures should be counted or disqualified. According to testimony, each agency therefore approached the verification process without uniformity and initially reported their results by telephone to central NEA. An Initiative Petitions Report later followed as to the number of signatures submitted, counted, and disqualified. No official tally was ever generated by the NEA, nor were the results certified by the Navajo Election Board of Supervisors pri- or to its release.
V
We nowT turn to the first issue of whether the NEA’s determination of insufficiency as to the Reduction Initiative was supported by substantial evidence. During the final hearing, Mr. Edison Waune-ka, Director of NEA, was asked by IPC’s legal counsel what numbers were reported to the IPC regarding signatures “counted” by Navajo agencies. Mr. Wauneka confirmed that 3,531 signatures were counted for Eastern Agency. He further agreed signatures counted for other agencies were: 4,474 for Fort Defiance; 3,525 for *268 Chinle; 2,084 for Western; and 3,277 for Northern Navajo Agency. He then conceded that by adding those numbers a total of 16,891 signatures were counted for the Reduction Initiative. Mr. Frank Sean-ez, Chief Legislative Counsel and NEA’s legal counsel,[3] informed the hearing officer that he also got “16,891” but that he had benefit of a calculator. Thus, Mr. Seanez informed the hearing officer, “we would so stipulate to that number.” Transcript of Record at 89, March 30, 2009 (emphasis added).
Mr. Wauneka then confirmed for the record that the 16,891 signatures counted exceeded the statutory requirement of 16,-530, 15% of the total registered voters. Although Mr. Wauneka was surprised by the miscalculation, he further explained that he did not have time to calculate all five ageneies but NEA’s numbers were correct. When asked if he would stipulate to those numbers, Mr. Seanez affirmatively stated:
Madam Hearing Officer, those numbers were accumulated by the NEA staff themselves without the intervention of other staff, so as these are numbers generated by the Respondent [NEA] themselves, I find it difficult to do anything other than to ... than to agree with the numbers provided by my client.
Transcript of Record at 91, March 30, 2009. Counsel for the IPC then moved for summary judgment. Mr. Seanez, surprised that the total derived from NEA’s numbers exceeded the statutory requirement, conceded:
Madam Hearing Officer, we’re again at a loss to disagree with the numbers provided by our client, Madam Hearing Officer, and we do not ... we did not dictate those numbers or tell them what numbers they try to come up with, Madam Hearing Officer. We must rely on these numbers provided by the client.
Transcript of Record at 96, March 30, 2009 (emphasis added). With this concession, the hearing officer recessed the proceeding and provided NEA an opportunity to provide any explanation as to any miscalculation. Upon reconvening, NEA stated the numbers reported and stipulated to during the hearing were incorrect and that testimony would disclose clerical errors. Moreover, NEA insisted that if adjustments are made to previously reported numbers, IPC would not meet the 15% statutory requirement. Upon IPC’s renewal of its summary judgment, the hearing officer granted summary judgment in favor of IPC explaining that they were likely to discover no proof and no clear explanation and that the parties were now at the final hearing.[4] NEA did not object *269 to the summary judgment and therefore, NEA waived its objection for appeal.
The Court notes that there is no formal rule in OHA’s proceedings regulating the concept of a summary judgment. The Court also notes that neither party, nor Hearing Officer Perry, mentioned nor resorted to any specific rule of the court. IPC’s counsel admitted at oral argument that he used the phrase “summary judgment” in legal parlance to address to the hearing officer that there were no material facts in dispute. The numbers were agreed to by both parties. The Hearing Officer determined in her final judgment that there was no dispute as to the figures. Hearing Officer Perry, in her discretion, determined there is no need to engage in further hearings when there is a stipulation in the proceeding. That decision is not an abuse of discretion.
Even were the Court persuaded by NEA’s argument, “the grant of summary judgment is a question of law that is reviewed de novo.’'’ Thomas v. Chink, Chapter, Div. of Cmty. Dev., No. SC-CV-30-06, 7 Am. Tribal Law 522 (Navajo May 4, 2007). Therefore, the Court gives no deference to OHA’s legal conclusions. Id. Summary judgment “shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Nav.R.C.P. Rule 56(c).
We find that the hearing officer did not abuse her discretion in granting summary judgment upon results reported by the NEA and a stipulation as to those results by the NEA and its counsel. In election matters, there is a presumption that results reported by the NEA are valid. To ensure the confidence of the People in their government, the presumption is that NEA’s staff have duly performed their duties and that the reported results are correct. It would be absurd to allow the NEA to now attack its own results and present new figures at the eleventh hour, especially when no effort was made to amend the results in the intervening six months. We need not rely on Diñé Bi Bemahaz’ áanii and/or Fundamental Law to reach a decision in this matter.[5] We will decide this matter based on the Election Code as was suggested by NEA and its counsel.[6] We conclude that the hearing officer’s determination of sufficiency as to the Reduction Initiative was supported by substantial evidence—the stipulated numbers, in and of itself, is substantial evidence. The Reduction Initiative is deemed sufficient based on NEA’s reported number of “signatures counted” by agency, which totaled 16,891 and exceeded the statutory requirement of 16,530.
VI
We turn to the next issue of whether the NEA’s determination of insufficiency as to *270 the Line-item Initiative was supported by substantial evidence. NEA reported, during the course of the hearing, that the Line-item Initiative petition was insufficient to place on the ballot because 14,150 signatures were counted, which was less than the 16,530 signature required by law. According to the NEA, it removed names from consideration for the following reasons: unregistered voter, no census number, no or incomplete social security number, no or incorrect chapter, use of “ditto” marks, no printed name, inaccurate or incomplete address, and no date of signing.
Only eligible registered voters may sign a petition. 11 N.N.C. § 404(B)(11) (2005). According to NEA, to establish the validity of each signature, the statute requires additional pieces of information be provided by signers. 11 N.N.C. § 404(B)(13)(b). NEA has interpreted the statute to read that any missing, incomplete or illegible piece of information renders the signature invalid. This view, however, does not address the language of 11 N.N.C. § 404(B)(13)(b) which reads, “[t]he Election Administration staff shall examine, verify and certify the petitions as sufficient before ordering an election.” (emphasis added).
We interpret this language to read as an affirmative duty on the part of the NEA. To simply remove signatures that otherwise provide valid information because of an illegible signature or a field left blank or incomplete, denies the People the opportunity to add their voice to the democratic process. We interpret the language of the law to mean that the NEA is compelled to use its regulatory due diligence (examine—ná nil’i, verify—t’áásk ákót’é, and certify—bilc’int’oót’áál) in verifying the identity of questionable signers. We find this especially important to the Navajo People, as some elders may struggle with filling out all of the required information, or may make a mistake.
This is a case of first impression. We recognize that Navajo case law has not addressed this situation and other jurisdictions can provide guidance. We thus rule that errors, which do not demonstrate an intent to defraud the process or are indicative of malice, should not be fatal to the signer. In re Initiative Petition No. 317, State Question No. 556, 648 P.2d 1207 (Okla., 1982). Due diligence, in this case, implied by Council’s command that NEA examine and verify petitions means that they are compeled to make a good faith effort to ascertain the validity of the signature by comparing it to voter registration records on file, contacting citizens at their addresses or other similar means easily at their disposal. Id. at 1211.
In the course of the six months when NEA was in possession of the entirety of the signed petitions, not one effort was made to ascertain the identity of stricken signers. According to the testimony of one of the voter registration specialists, there was little time to compare the signature sheets with the records on file. This error is an example of the many systemic problems that plagued the verification process from the beginning.
If the Court were to remand the case to the fact finding body, it would require a lengthy process to verify each signature independently, following a lengthy process to ascertain veracity of incomplete signature as discussed above. This would defeat the entire purpose of the petition drive, as the Court would not be able to enter a ruling in time to make the upcoming election. The language of the initiatives includes an internal timeline. This scenario presents the possibility of frustrating the democratic process, especially since the many legal delays are due in large part to the failures of the NEA itself.
*271 This Court finds that the IPC operated in good faith following the rules as best it could given the lack of clear directives in carrying out its drive. It submitted what it believed to be more than enough signatures in order to pass the 15% of registered voters threshold. Yet NEA chose to apply a very strict interpretation of the rules, failed to pursue with due diligence the verification of many of the signatures, and failed to accurately and timely count the signatures; all factors well beyond the anticipation or control of IPC. We therefore find that the unreliable numbers reported by the NEA are inherently and systemically flawed. It therefore cannot be determined by the Court, in the time intended by the initiatives, whether enough valid signatures have in fact been submitted. The law is clear that there has to be due diligence as described herein. But there has been a failure by the regulatory body to implement the law through proper guidelines and standards. This systemic failure to execute statutory responsibilities should not delay the People’s participation in their government. This Court sees no just option but to affirm the hearing officer’s decision allowing the Line-item Initiative to continue to a vote. The Court differs, however, in its reasoning to uphold the hearing officer’s decision. Considering the systemic flaws in NEA’s policies and its decision to exclude rather than include willing signers and the lack of sufficient standards to implement the intent of the statutory law, this Court affirms OHA’s determination of sufficiency on different grounds.
VII
For the foregoing reasons, the Court AFFIRMS the Corrected Final Judgment of the Office of Hearings and Appeals entered on June 25, 2009. As to the award of costs and attorney’s fees concerning the motion for disqualification, IPC shall submit its costs and fees in responding to the motion to this Court by August 5, 2009. The parties are urged to agree to costs and fees. If necessary, the Court will consider whether a hearing is necessary on the matter by August 13, 2009.

. Rules 7(a) of the Navajo Rules of Civil Appellate Procedures (NRCAP) requires all appeals to originate with a notice of appeal, a certified copy of the final judgment being *265 appealed, and the filing fee paid at the time of filing. Rule 7(b) of NRCAP further states no appeal shall be considered filed until the filing fee has been paid and a copy of the final judgment has been attached. Requirements of Rules 7(a) and 7(b) are jurisdictional. Joe v. Atkins, 6 Nav. R. 8 (Nav.Sup.Ct.1988). The NEA asserts Rule 2 of the Navajo Rules of Court provides an exemption to the Navajo Nation, including the NEA, from filing fees. However, the Navajo Rules of Court, adopted by district court judges, are applicable to district courts of the Navajo Nation, and not to the Supreme Court. We hereby hold that the Navajo Nation is not exempt from jurisdictional requirements of Rules 7(a) and 7(b) of the NRCAP.

. The cited language by NEA is:
First, the issues at stake here are of significant impact throughout the Navajo Nation. The petition itself suggests a significant change in the structure of Navajo government by reducing the size of the Council and granting the President line-item veto power. But more importantly, the issues raised by the Petitioner involve the fundamental right of the People to participate in their democracy and determine their form of government. The concept of self-governance at an individual level and at the national level is expressed in Title 1 of our Dine Fundamental Law and the Navajo Bill of Rights. Self-governance is an inherent right. 1 N.N.C. § 202(D). Self-governance is premised on the principle that "Dine bi nahat ‘á is the foundation of the Dine bi naat 'á (government).” 1 N.N.C. § 202. Self-governance thus is expressed not only in the right of Navajo individuals, but also in self-governance at the national (or tribal) level. This inherent right is retained by the People. This “reserved” right cannot be denied or disparaged except by a vote of the People.
Appellant's Motion for Disqualification at 3.

. The Court notes that throughout these proceedings, the Office of Legislative Counsel chief legal advisor to Council—was also legal counsel to the NEA. The two initiative petitions to be referred to the People will directly affect the structure of Council and their authority, if passed. Although the NEA, the administrative office for the Navajo Board of Election Supervisors, is an independent entity within the legislative branch of the Navajo Nation, it is responsible only to Council. See Pioche v. Nav. Bd. Of Election Supervisors, 6 Nav. R. 360, 362 (Nav.Sup.Ct.1991) (emphasis added) (stating the Navajo Board of Election Supervisors is under direct supervision of Council). To allow elected officials to supervise the regulatory entity that administers elections and certifies petitions raises the likelihood of impartiality, abuses of power, and corruption. It is critical that the NEA be a neutral body independent of the politics of the elected branches of government to ensure public faith in the petition verification process.

. In his closing argument, Mr. Seanez stated that “Evidence admitted at the hearing shows that the NEA had apparently miscalculated the number of signatures for the Council Reduction petition, and that the number of counted [signatures] exceeded the 16,500 voter signatures needed to place the Council *269 Reduction initiative on the ballot.” Transcript of Record, May 31, 2009, p 69,

. Thought-provoking points were raised by the IPC as to the 15% of registered voters statutory requirement. IPC raised questions as to why there should be such an exclusive requirement that only registered voters participate in initiatives. IPC argued that all enrolled members, including those under 18 years of age, should be able to participate in determining their form of government and that the 15% threshold should be 15% of those who voted in the last election. The Court expresses no opinion on these points.

. NEA’s counsel suggested as follows "this dispute over signatures should be decided based on the Administration’s compliance with the law'.” Appellant’s Opening Brief at 39.