OPINION

Theresa Beeenti-Aguilar filed a post-election complaint claiming Steven Begay was not qualified at the filing of his candidacy application because he was in the permanent employment of a federal agency. The Office of Hearings and Appeals ruled that Begay was eligible to run for Council Delegate and should be allowed to take the oath of office because the Navajo Election Administration and Begay agreed before the election that Begay would be allowed to run with the stipulation that if elected, he would resign. OHA’s decision is reversed and remanded.
I
After the removal of Mel R. Begay from the Navajo Nation Council (Council), several candidates including Appellant Theresa Beeenti-Aguilar (Beeenti-Aguilar) and Steven Begay (Begay) sought the vacant position of Council Delegate. A special election was held on June 28, 2016. Begay received the most votes. On July 5, 2016 Beeenti-Aguilar filed a grievance with the Office of Hearings and Appeals (OHA) under 11 N.N.C. § 341 claiming Begay was ineligible to run because he was in the permanent employment of the United States at the time of the filing of his candidacy. Initially, OHA dismissed her grievance on July 6, 2016 stating her complaint was insufficient because she failed to name the position that Begay holds as a permanent employee of the United States. The dismissal was appealed and, on July 22, 2016, we reversed the dismissal and remanded the matter ordering OHA to set a hearing.
On August 4, 2016 OHA held a hearing. In a Final Order dated August 22, 2016, OHA determined that Begay was “eligible” and should be allowed to take the oath of office. OHA stated the Navajo Election Administration (NEA) initially determined Begay ineligible because he was in the permanent employment of the Gallup Indian Medical Center at the time of the filing of his candidacy application. OHA further stated, upon Begay’s grievance, it accepted a stipulated agreement between NEA and Begay allowing Begay to run as a candidate provided that if elected, Begay would, *488 prior to taking the oath of office, “immediately resign from his federal employment and provide written documentation of such resignation to NEA and OHA.” Final Order, at 2 (OHA August 22, 2016). On September 1, 2016, Becenti-Aguilar appealed the Final Order asserting that OHA erred in not upholding Begay’s initial ineligibility determination.
We held oral argument on December 6, 2016 in Window Rock. At oral argument, we determined that NEA did not inform the other candidates of the stipulation reversing Begay’s ineligibility. Although NEA asserts Begay’s hearing was open to the public, the Final Order indicates that on the same day that Begay filed his grievance, NEA and Begay stipulated to a resolution that was approved with no mention of a hearing. Furthermore, despite OHA’s prior decision to accept Begay and NEA’s stipulation, OHA dismissed Becenti-Agui-lar’s initial grievance on July 6, 2016 and did not mention the stipulation that permitted Begay to run as a candidate. OHA simply dismissed Becenti-Aguilar’s grievance stating she failed to name the position Begay “holds” as a permanent employee of the United States.
II
The issue is whether the Navajo Election Code authorizes OHA to allow a candidate to run for public office when that individual is determined not qualified for the position sought.
III
In election disputes, the Supreme Court will give no deference to the legal conclusions of the Office of Hearings and Appeals. Navajo Election Administration v. Martinez, 8 Am. Tribal Law 261 (Nav.Sup.Ct.2009). The Supreme Court reviews decisions of the Office of Hearings and Appeals upholding challenges to candidates under a sufficiency of the evidence standard. In re Grievance of Wagner, 7 Am. Tribal Law 528 (Nav.Sup.Ct.2007). A decision lacks sufficient evidence if OHA misinterpreted the law. Id., The Court therefore can reverse OHA’s decision if OHA’s legal interpretation is incorrect. Id,
IV
The Navajo Election Code provides candidates for Council Delegate, among other things, “[m]ust not be in the permanent employment of the United States or any state or subdivision thereof, or be an elected official of the United States or any state or subdivision thereof, with the exception of service on a school board or elective county office.” 11 N.N.C. § 8(B)(11) (2005). ‘Within 30 days of receipt of the application, the Election Administration shall review, verify and determine, on the face of the candidate application, the qualifications for candidacy.” 11 N.N.C. § 23(A). “If the Election Administration determines an individual is not qualified for the position sought, it shall deny the application for candidacy as ineligible.” 11 N.N.C. § 23(B) (emphasis added). A candidate whose application is denied as ineligible has the right to file an appeal with OHA. Id. On April 27, 2016 Begay filed his candidacy application and disclosed he was in the permanent employment of the federal government. The NEA determined Be-gay ineligible. NEA’s determination was supported by sufficient evidence. Begay filed a grievance against NEA with OHA challenging his ineligibility determination. NEA and Begay stipulated to a resolution. OHA ruled that Begay will be deemed “eligible” and allowed to run with the stipulation that if elected, Begay would resign from his federal employment before taking the oath of office.
*489 On appeal, OHA relies on In re Grievance of Wagner, 7 Am. Tribal Law 528 (Nav.Sup.Ct.2007) to support its decision. In that appeal, Wagner filed a grievance “challenging Tsosie’s election on several grounds, including ... that based on Title 2 of the Navajo Nation Code and the Navajo Nation Election Code, he could not be elected as a council delegate because he was a state senator.” Id., 7 Am. Tribal Law at 530. Wagner did not challenge Tsosie’s qualifications but whether, as an elected candidate, he could simultaneously serve two sovereigns. OHA invalidated Tsosie’s election on grounds that included “he could not serve as a council delegate and as a member of a state legislature at the same time, and therefore, as he was a state senator at the time of the election, he could not be a council delegate.” Id., 7 Am. Tribal Law at 530. On appeal, the Court reversed the invalidation of Tsosie’s election because the Election Code did not authorize OHA to invalidate elections. Relying on 2 N.N.C. § 104(B) and 11 N.N.C. § 8(B)(11), the Court held that “[t]he prohibition is consistent with our Fundamental Law, and it is not improper for the Election Code to require Tsosie to serve only one government.” Id., 7 Am. Tribal Law at 533. Based on this determinative ruling, the Court declined to rule on Tsosie’s equal protection arguments.
In support of arguments to uphold the decision of OHA, Begay, and even NEA, would have us accept that Wagner went further to permit candidates to run for office although they do not meet the qualification under 11 N.N.C. § 8(B)(11). Although the Court allowed Tsosie to choose having reversed OHA’s decision not to invalidate Tsosie’s election, the Court did not hold that candidates may run for office while employed with the federal or state government if they agreed to later resign when elected. This is clearly a misreading of Wagner. Begay would also have us accept that Wagner ruled this particular qualification is applicable at the oath of office and not at the filing of the candidacy application. However, we previously ruled that qualifications in 11 N.N.C. § 8 are “prerequisites” for filing one’s candidacy for elective office. Tsosie v. Deschene, 12 Am. Tribal Law 55, 59 (Nav.Sup.Ct.2014).
In the alternative, Begay asks that we strike down 11 N.N.C. § 8(B)(11) as an unreasonable restriction on the right of the Navajo People to choose its leader and a violation of the equal protection clause of the Navajo Nation Bill of Rights. In support of Begay’s request, NEA asserts that during the adoption of the 1990 Election Code, Council Delegate Ernest Hubbell proposed changes, which would have permitted state and federal to run and later resign, that were lost in the enactment shuffle. Rather than make these arguments before OHA in the first instance, Begay decided to enter into an agreement with NEA that allowed him to run. Moreover, Begay and NEA remained silent as to that agreement, thwarting any pre-election challenge. Under the circumstances of this ease and in consideration of established law that a party may not raise new arguments on appeal, e.g., Gudac v. Marianito, 1 Nav. R. 385, 394 (Nav.Ct.App.1975), we decline to hear these new arguments on appeal. Furthermore, the fact is 11 N.N.C. § 8(B)(11) was debated and enacted by the Council. Taking judicial notice of recent legislative actions in response to public concern, see CMA-06-15 (approving referendum to modify 11 N.N.C. § 8(A)(4)), we leave legislative amendments of purported oversights to the Council. We thus decline to strike down 11 N.N.C. § 8(B)(11).
At the center of this dispute is the authority of OHA to allow an ineligible candidate to run although that individual is not *490 qualified as set forth in set forth in 11 N.N.C. § 8. “OHA’s authority derives solely from the statute granting it authority to hear a particular type of case.” Wagner, 7 Am. Tribal Law at 531. In this case, OHA’s authority derives from the Election Code. Under the Election Code, “If the Election Administration determines an individual is not qualified for the position sought, it shall deny the application for candidacy as ineligible.” 11 N.N.C. § 23(B) (emphasis added). The use of the word “shall” means there is no discretion. The qualifications set forth in 11 N.N.C. § 8 are also mandatory in themselves. We therefore hold the Election Code does not authorize OHA to allow a candidate to run for public office when that individual is determined not qualified for the position sought.
V
We have previously stated the treatment of an election challenge depends on whether it was filed pre or post-election. In Haskie v. Navajo Board of Elections, 6 Nav. R. 336 (Nav.Sup.Ct.1991), we stated “election statutes are mandatory when enforcement is sought prior to an election, but they are read to be directory only when challenges are raised after an election.” Id., 6 Nav. R. at 338 (citing Johnson v. June, 4 Nav. R. 79, 81 (Nav.App.Ct.1983)). We also stated that in a post-election challenge, statutory provisions must be read in such a way as to support the results of the election unless the appellant “showed that the asserted errors were such as to obstruct a free and intelligent vote, obstruct ascertainment of the results of the election, deny an essential element required for a valid election, or otherwise void the election.” Id., at 338-339 (internal citations omitted).
Haskie raised a post-election challenge of a decision to permit the write-in candidate to run without following the statutory certification process. The Court viewed the post-election challenge with disapproval because the challenge concerned procedures which were known to Haskie before the election, but which he raised only after the people had duly voted and Haskie had lost in the general election. Here, OHA’s decision to accept a stipulation that essentially circumvented 11 N.N.C. § 8(B)(11) was not known to Becenti-Aguilar or the other candidates so that she or any of the other candidates could initiate grievance procedures before the election.
We have previously stated that elected officials have no property interest in their office, and that any interest in that office belongs to the public. In re Removal of Katenay, 6 Nav. R. 81, 85 (Nav.Sup.Ct.1989). The same holds true for candidates running for an office. At all times, the focus of the election statutes for enforcement purposes must be on the public interest, both in the process and its fair outcome.[1] In Haskie, the lack of due diligence of the challenger greatly disturbed this Court because “it is easier to correct errors when they surface before an election than it is when they are raised after an election, when the electorate has already made its choice.” Id., at 338. However, a disregard of statutory provisions by stipulation of the parties that denies a timely challenge is readily distinguishable from lack of due diligence. In this case, there is no dispute that Begay was not qualified to run at the filing of his application due to his employment with the feder *491 al government. It is also shown when OHA ruled that Begay should be permitted to run, it did so by approving of a stipulation that violated the Election Code.
A candidate’s qualification is an essential element required in order to stand for election in any elective office. Thereby, it is an essential element of a candidate’s valid election. Without question, OHA may not circumvent mandated qualifications established by the Council by keeping information as to a stipulation from other candidates and the voting public until an election is over. Qualification requirements are not waived simply because an election has taken place. See Gishey v. Begay, 7 Nav. R. 377, 2 Am. Tribal Law 432 (Nav.Sup.Ct.1999); Sandoval v. Navajo Election Administration, 11 Am. Tribal Law 112 (Nav.Sup.Ct.2013). In short, the execution and subsequent withholding of a stipulation that permitted Begay to run despite his disqualifying condition denies an essential element required for a candidate’s valid election and otherwise voids the candidate’s election if that candidate prevails. Under the circumstances of this case, the enforcement of qualifications and the certification procedure therefore must be read as mandatory. Because an agreement that circumvents Navajo law is void ab initio, the election of Begay who was not qualified at the onset is necessarily void, and no presumption of validity needs to be overcome.
The Election Code anticipates events after the general election wherein a vacancy is declared and filled pursuant to applicable provisions. 11 N.N.C. § 45. This matter is remanded to the OHA for disposition in accordance with those provisions.
YI
The decision of OHA is REVERSED and REMANDED for disposition of the underlying grievance in accordance with this decision.

. The Navajo Nation Council chose to make changes in the qualifications of candidates for public office in 1990 and the provisions serve a legitimate Council purpose to "to assure public confidence in the integrity of the Navajo Nation Government.” MacDonald v. Redhouse, 6 Nav. R. 342, 347 (Nav.Sup.Ct.1991).