OPINION

This case concerns a request for a certified question from the Office of Hearings and Appeals (OHA) arising out of a dispute between the President of the Navajo Nation and the Speaker of the Navajo Nation Council over the decision of the Navajo Nation Election Administration (Election Administration) that two initiative petitions are sufficient under the election laws. The Court accepts the question, and holds that the Navajo Nation Council deferred to the Navajo People to make amendments to Section 102(A) of Title II of the Navajo Nation Code, and may not amend it independently.
I
The relevant facts are as follows. On April 29, 2008, Navajo Nation President Joe Shirley, Jr. (President) filed two documents, each called a “Navajo Nation Wide Initiative Petition” (collectively “Initiative Petitions”) with the Election Administration. If approved by Navajo voters, the Initiative Petitions would reduce the number of Navajo Nation Council delegates from 88 to 24 and expand the powers of the President by giving him line-item veto authority. The Election Administration reviewed the Petitions, and declared them sufficient. The Navajo Nation Speaker Lawrence Morgan (Speaker) filed an objection to the Initiative Petitions with OHA, challenging the determination that the Petitions were sufficient, and moved for summary judgment. President Shirley filed a motion to dismiss on the grounds that OHA lacks jurisdiction in the matter.[1]
According to Petitioner OHA, the parties currently are discussing a settlement of their dispute, but a disagreement on one issue of law hampers resolution. Specifically, as discussed in more detail below, the parties disagree whether Section 102(A) of Title II, which states that the Council is made up of 88 delegates, can be amended only by Navajo voters, or also by the Council. The parties jointly filed a motion asking that OHA certify the question to this Court. OHA filed its Petition for Certification of a Question (Petition) with this Court on July 16, 2008. According to OHA, the parties want the Court to answer the question prior to the beginning of the regular session of the Navajo Nation Council on July 21, 2008. According to the parties, an answer before then is “essential to the mutually beneficial outcome of their settlement discussions.” Petition at 3.
II
The issues in this case are (1) whether the Supreme Court can accept certified questions from OHA, (2) whether the Court can accept the specific question asked by OHA, and (3) whether the Council, in addition to the Navajo People, may make amendments to Section 102(A) of Title II of the Navajo Nation Code.
HI
There is a threshold question not discussed in OHA’s Petition: whether the Supreme Court can accept a certified *630 question from OHA, a quasi-judicial tribunal under the Executive Branch. Both parties in the OHA proceeding requested the question be certified, but the Supreme Court is obliged to examine its own jurisdiction despite their agreement that the Court has authority to hear this matter. See In re A.P., No. SC-CV-02-05, 6 Am. Tribal Law 660, 662, 2005 WL 6235943 at *2 (Nav.Sup.Ct.2005). The Court has answered certified questions before, but all have been questions submitted by trial courts. See In re Excused of Ferguson v. Marshall, 7 Nav. R. 320,1 Am. Tribal Law 489, 1998 WL 35278255 (Nav.Sup.Ct.1998); Navajo Nation v. MacDonald, 6 Nav. R. 204 (Nav.Sup.Ct.1990); Navajo Housing Authority v. Betsoi, 5 Nav. R. 5 (Ct.App.1984). Prior case law suggests only trial courts, not administrative agencies, can certify questions to this Court. See In re Navajo Board of Election Supervisors, 6 Nav. R. 302, 303-04 (Nav.Sup.Ct.1990). According to the Court, the Navajo Board of Election Supervisors could not certify a question, because answering a certified question from an administrative agency under the Executive Branch would violate separation of powers principles. Election Supervisors, 6 Nav. R., at 304.
Notwithstanding prior case law, the Office of Hearings and Appeals can certify this question to the Court. Principles of separation of powers are not implicated in this instance. Though the OHA is a quasi-judicial tribunal in a separate branch of the Navajo Nation government, this Court has appellate authority over the legal conclusions it makes in this ease, just as it has appellate authority over the trial courts. See 11 N.N.C. § 404(B)(14)(b)(7) (2005) (establishing appellate authority over OHA decisions on initiative petition objections). Therefore, our appellate authority over OHA gives this Court the jurisdiction to hear its certified questions, and Election Supervisors is overruled.
IV
The next issue is whether the Court can accept OHA’s specific question. The Court has set out the necessary elements for a certified question in Navajo Housing Authority v. Betsoi. 5 Nav. R. 5, 6-7 (Nav.Ct.App.1984). To be accepted, the question (1) must be one of legal doubt requiring a final determination of law, (2) must be of material importance or an issue of substantial public interest, and (3) may so affect the merits of the controversy that it ought to be determined by the Court before further proceedings in the lower tribunal. Id. at 6-7. Further, the question should be “carefully and precisely framed” to present “distinctly and clearly” the proposition involved. Id. at 7. Finally, the request for certification should contain “the proper statement of the ultimate facts upon which the question arises” and should “clearly show” what the lower tribunal wishes the Court to do. Id.
The Court holds the question presented fulfills these elements. The question whether the Council may independently amend Section 102(A) has never been before this Court. It therefore is of legal doubt, and requires a final determination of law. It dearly is of material importance to the Navajo Council and the People. It is precisely framed, and the proposition involved is distinct and clear: whether the Council has authority to amend Section 102(A). OHA has presented the ultimate facts underlying the question, and clearly has stated what it wishes the Court to do.
The only issue is whether OHA has shown that the question may affect the merits of the underlying dispute. According to OHA’s Petition, the question arises out of settlement discussions between the *631 two parties. According to OHA, resolution of the question will allow the parties to settle their differences, and ultimately will result in dismissal of the dispute. However, it appears that the precise question is not before OHA in either the motion to dismiss filed by the President or the motion for summary judgment filed the Speaker. OHA does not attach the motions to its Petition, but its limited description of those motions suggests that the power of the Council to independently amend Section 102(A) is not directly at issue.
The Court nonetheless holds that the question will affect the merits of the underlying controversy, and accepts the question. The Court is satisfied that resolution of the question will result in resolution of the parties’ dispute. OHA asserts that the parties are near settlement, and that this question is the only thing in the way of resolving the dispute. Once settled, the suggestion is that the underlying case before OHA will be dismissed. The potential effect of the Court’s answer to the question on the ultimate resolution of the case is sufficient to certify the question and answer it.
V
The Court now turns to the merits of the question. The precise question submitted by OHA, and as stipulated by the parties is:
Whether only the Navajo voters have authority to amend 2 N.N.C. § 102(A) or whether the Navajo Nation Council has also retained independent authority to amend § 102(A) without referring the amendment to Navajo voters?
Petition at 4. Section 1.02(A) of Title II states:
The Navajo Nation Council shall be the governing body of the Navajo Nation and shall consist of 88 delegates. This § 102(A) shall not be amended unless approved by majority vote of all registered voters in all precincts.
In its Petition OHA presents the arguments of the President and Speaker on the question, though it does not identify which party made which argument.[2] According to one party, Section 102(A) is clear; only the People can amend it. According to the other party, two paragraphs of the resolution approving amendments to Title II, including Section 102(A), authorize the Council to independently amend it. Paragraph 6 of the Resolved Clause states that “[t]he Navajo Tribal Council further authorizes and directs that any amendment to [Title II] shall require two/thirds (2/3) vote of the full membership of the Council.” Resolution No. CD-68-89 (December 15, 1989). Paragraph 7 of the Resolved Clause states that “[t]he Navajo Tribal Council further authorizes ... that [Section 102(A) ] shall not apply to amendments duly proposed by the Navajo Nation Commission on Navajo Government Development.” Id. The other party further argues that the Council intended that the Navajo People only have the exclusive authority to approve increases, but that it retained the authority, in addition to the People, to decrease the size of the Council. Finally, the other party argues that the Council retains the authority to amend any statute, because it may “withdraw, limit or supervise” all delegated powers. Petition *632 at 5 (quoting In re Certified Questions II, 6 Nav. R. 105, 115 (Nav. Sup.Ct.1990)).
Importantly, the assumption within the certified question is that the Navajo People have the power to amend the size of the Navajo Nation Council. The parties and OHA agree on this point. The Court readily agrees as well. On this, there can be no dispute. Under Fundamental Law, the Navajo People, as well as the Council, may make laws for the good of the community; the People’s authority to make laws is not delegated to them by the Council. See 1 N.N.C. §§ 201; 206 (2005) (setting out Dine Original Law Structure). The referendum and initiative processes are modern acknowledgments of this authority. See 11 N.N.C. §§ 401, et seq. (2005). Such authority is also acknowledged by the Diñé leaders who approved the Treaty of 1868, who agreed that future alienation of Navajo land required a three-quarters vote of the Navajo People. Treaty of 1868 between the United States and the Navajo Tribe of Indians, June 1, 1868, art. 10, 15 Stat. 667, 670. The Council may reasonably regulate the People’s authoi'ity to make laws through setting qualifications for voters in such referenda and initiatives, see In re Appeal of Vern, Lee, No. SC-CV-32-06, 6 Am. Tribal Law 788, 791-92, 2006 WL 6171261 at *3-4 (Nav.Sup.Ct.2006), but the ultimate power to govern the Nation always remains with the People. There is no question that the People as “Navajo voters” may amend this, or any other law through the referendum or initiative process; the only question is whether the Council may also amend this Section of Title II.
The Court has described Title II as “organic law” for the Nation. See Bennett v. Navajo Bd. of Election Supervisors, 6 Nav. R. 319, 323 (Nav.Sup.Ct.1990). As such, this Court construes the procedures the Council set for itself in Title II strictly, and has invalidated prior attempts by the Council to pass laws outside those procedures. See Judy v. White, No. SC-CV-35-02, 5 Am. Tribal Law 418, 429-32, 2004 WL 5658577 at *10-12 (Nav.Sup.Ct.2004) (failure to follow Section 106(A) of Title II); In re Certified Question Concerning v. Nez, No. SC-CV-49-00, 3 Am. Tribal Law 497, 500-01, 2001 WL 36173242 at *2-4 (Nav.Sup.Ct,2001) (failure to follow Sections 164, 165, and 1005); Navajo Nation v. Redhouse, 6 Nav. R. 305, 308 (Nav.Sup.Ct.1990) (failure to follow Section 164). In Judy, the Court rejected one of the arguments one party makes in this case: that paragraph 7 of the Resolution approving amendments to Title II is independent authority for the Council to pass legislation free of a specific condition in a section of Title II. See Judy, No. SC-CV-35-02, 5 Am. Tribal at 429-32, 2004 WL 5658577 at *10-12. The Court concluded that Section 7 was not law, as it was not approved consistent with the Council’s procedures. Id. Specifically, the Court stated that paragraph 7 was not underlined or overstricken as required by Section 165 of Title II, and therefore did not demonstrate the necessary “deliberation and contemplation” for passing laws. Id. at 432, 2004 WL 5658577 at *12. Because of that defect, paragraph 7 did not authorize the Council to adopt a Jaw outside the procedure set out in Sections 106(A) and 1008 of Title II, which required approval by two-thirds of all Chapters. Id.
As discussed above, one party argues that paragraphs 6 and 7 of the resolution separately empower the Council to make amendments to Section 102(A). Judy holds paragraph 7 does not. Though not discussed in Judy, Paragraph 6 of the resolution has the same defect as paragraph 7; it does not conform to Section *633 165’s procedural requirements. The Court might similarly conclude that neither paragraph in the resolution empowers the Council to amend Section 102(A).
However, rather than relying on the rationale in Judy, the Court focuses on a fundamental principle; the Council itself has clearly deferred the power to approve all amendments to Section 102(A) to the Navajo People. The Court concludes that by its plain words, the Council has agreed that the Navajo People have the sole authority to change the size of the Council. In Navajo thought, words are sacred and never frivolous. In re Grievance of Wagner, No. SC-CV-01-07, 7 Am. Tribal Law 528, 532-33, 2007 WL 5893637 at *3-4 (Nav.Sup.Ct.2007) (“The Dine People will keep [a] delegate to his or her words.”). If words are said, they are meant. Here, the Council has represented to the Navajo People that they alone shall make the important policy decision whether the Council shall remain at 88 delegates. Contrary to one party’s argument, this means the People may reduce or increase the size; there is no language in Section 102(A) to suggest otherwise. There is no reservation of authority; the Council unequivocally has taken itself out of the process. Further, no general authority stated elsewhere can alter that once the Council has deferred to the People; to hold otherwise would be to render the Council’s words meaningless. Surely the Council would not say one thing and do another. Therefore, whether or not paragraphs 6 and 7 are valid, they cannot at this point override or extinguish the authority of the People to decide this fundamental question concerning Navajo government. Further, the Council possesses no other independent authority to alter or abolish its dear deference to the Navajo People. As discussed above, both the People and the Council may make or amend Navajo laws; here the Council simply has told the Navajo People that it will not do so. The Council has recognized that the structure of the Navajo government is ultimately in the hands of the People, and it will look to the People to guide it.
VI
Based on the above, the Court answers OHA’s question as follows: The Navajo Nation Council may not amend Section 102(a) independently; it must defer to the will of the Navajo People.

. The Court emphasizes that the motions are not part of the record before it. The Court has not reviewed the motions, and makes no comment on them.

. The original opinion in this case attributed the arguments to each party. After the Court issued the opinion, it received information that these attributions were incorrect. Upon further review of OHA’s Petition, the Court notes that OHA does not identify which party made which argument. See Petition at 4. The Court therefore amended the original opinion so as to not attribute the arguments to a specific party.