OPINION

This case concerns a voter’s challenge to results of a special initiative election [1] to reduce the size of the Navajo Nation Council (Council) put forth by the Initiative Petition Committee. The challenger, Timothy Nelson (Mr. Nelson) filed his grievance in the Office of Hearings and Appeals (OHA) against the Initiative Petition Committee and the Office of the President, Joe Shirley, Jr. (IPC). OHA dismissed the voter’s grievance for insufficient and untimely complaints, and failure to join an indispensable party. The Court affirms the OHA.
I
SUMMARY OF THE APPEAL
We begin with a summary of the appeal as it came to our attention over the years. Rather than recite the entire procedural history within each case, we briefly cover relevant history and refer the reader to previous Court holdings.
On April 29, 2008, President Joe Shirley, Jr. filed with the Navajo Election Administration (NEA) two initiative petitions for a determination that the petitions were sufficient for circulation. If approved by Na *410 vajo voters, the initiative petitions would 1) reduce the size of the Council from 88 to 24 members and 2) authorize the President’s use of a budget line-item veto.[2] Per its rules, Rules 3-6 for Initiative Petitions, NEA declared both petitions sufficient for signature circulation on May 7, 2008. Petition for Certification of Question, In re Two Petitions, No. SC-CV-41-08, p. 2. On May 16, 2008, the Office of Legislative Counsel (OLC) questioned the completeness of the determination. Id. The NEA, on May 19, 2008, informed OLC that its evaluation was complete and the petitions were sufficient for circulation. Id. On May 19, 2008, the Speaker of the Council, Lawrence Morgan, objecting to the determination of sufficiency, filed a complaint with the OHA. During the course of that proceeding, the parties entered settlement discussions, during which OHA referred a certified question to this Court. Specifically, the question raised by the parties was whether 2 N.N.C. § 102(A)(relating to changes in the size of the Council) can be amended only by Navajo voters, or also by the Council The Court concluded that the plain wording of the provision showed that the Council agreed that the Navajo People have the sole authority to change the size of Council and that Council may not independently amend 2 N.N.C. § 102(A); the Council must defer to the will of the Navajo People. See In Re Two Initiative Petitions, No. SC-CV-41-08, 7 Am. Tribal Law 628 (Nav.Sup.Ct. July 18, 2008). The parties’ settlement talks resulted in a Final Settlement on August 13, 2009, which was neither implemented nor appealed.
The Initiative Petition Committee circulated both initiative petitions amongst the Navajo People. On October 28, 2008 President Shirley submitted the collected signatures to the NEA for signature verification. On November 7, 2008, the NEA determined both petitions insufficient because the requisite number (15 percent) of eligible registered voters was not met after thousands of signatures were disqualified. On November 17, 2008 the President, in disagreement with the NEA’s determination of insufficiency, filed a request for a hearing with the OHA. Several months passed with little or no action by OHA to set a hearing. On May 5, 2009—six months later—President Shirley filed with this Court a request for a writ of mandamus asserting that OHA failed to carry out its mandated task to expeditiously address the challenge. This Court issued a permanent writ of mandamus against OHA and appointed a Hearing Officer to immediately set a hearing and render a decision. See In re Navajo Nation Election Administration’s Determination of Insufficiency Regarding Two Initiative Petitions, No. SC-CV-24-09, 8 Am. Tribal Law 240 (Nav. June 22, 2009). On June 25, 2009, OHA issued a final judgment reversing NEA’s determination of insufficiency, finding that thousands of signatures had been wrongly disqualified by the NEA. NEA, through its attorney, the Office of Legislative Counsel, appealed. On July 20, 2009, this Court affirmed the OHA’s decision. The Court ruled that IPC had gathered the required amount of signatures on both petitions and ordered a special election within six months. See In re Navajo Nation Election Administration’s Determination of Insufficiency Regarding Two Initiative Petitions, No. SC-CV-28-09, 8 Am. Tribal Law 261 (Nav. July 30, 2009).
On October 22, 2009, the Navajo Board of Election Supervisors (NBOES), by Resolution BOESO-055-09, approved the offi *411 cial titles and descriptive summaries for both ballots. There were no challenges to the title, summary and legal effect of the ballots. A special election was scheduled for December 15, 2009. On December 15, 2009, the Navajo People went to the polls and approved both the reduction in Council and line-item veto initiatives. The Reduction in Council Initiative, which is relevant to this appeal, was approved by a simple majority of the registered Navajos who voted. 44% of all registered voters cast ballots; 25,206 voted in favor and 16,166 voted against. The NBOES has not certified the election results to date.
On December 23, 2009, Appellant Timothy Nelson (Mr. Nelson) filed a grievance with the OHA challenging the results of the Reduction in Council Initiative.[3] Mr. Nelson listed in his Statement of Grievance the following 10 complaints:
1. Majority vote required in ALL precincts. 2 NNC Section 102, A. Majority vote of registered voters required. 2 NNC Section 102, A.
2. Reappportionment on initiative does not coincide with current legislative plan to use 2010 census. 11 N.N.C. Section 9, Resolution of NNC. CJN-50-02.
3. Initiative petition timeliness are all expired at the time of the special election on 12/15/09. 11 NNC Section 402.D.
4. Full text of the initiative omits wording and violated the Navajo Nation Council’s right to overrule initiative by/t vote of full Council. 11 N.N.C. 402, D, 11 N.N.C. Section 409C(2).
5. Voters rejected for not voting in last election. 11 N.N.C. Section 406(A).
6. Initiative petition wording did not note majority vote required in all precincts. 11 NNC Section 406(B).
7. No Navajo Nation Police at polling places. 11 NNC Section 408(A)6
8. Complete text of initiative—showing timeliness not provided [sic] on ballot. 11 NNC Section 407(D).
9. “Influence” by President—granting 2 hours additional leave for NN employees. 11 NNC Section 363(B).
10. Initiative to reduce Council does not have an adequate plan outlined for the effects of this initiative. Procedural.
Statement of Grievance, December 23, 2009, R. at 11.
On December 29, 2009, OHA scheduled the matter for a hearing to be held on January 21, 2010. IPC filed a Response to the Statement of Grievance and a Motion to Dismiss Mr. Nelson’s Complaint on January 11, 2010. IPC mailed the pleadings to Mr. Nelson on January 11, 2010. That same day, OHA contacted Mr. Nelson by phone and asked if he would like the pleadings faxed to him, but Mr. Nelson declined. On January 14, 2010, OHA was contacted by Mr. Nelson’s chapter representative and asked to telephone Mr. John Trebon, who would be representing Mr. Nelson. That same day, OHA spoke with Mr. Trebon and faxed him IPC’s pleadings. On January 15, 2010, OHA dismissed Mr. Nelson’s grievance and vacated the scheduled hearing, concluding that: 1) Mr. Nelson’s complaints in paragraphs 1 and 10 do not allege noncompliance with the Election Code; 2) Mr. Nelson’s coin- *412 plaints in paragraphs 1, 4, 6, and 10 were untimely raised; and 3) Mr. Nelson failed to join the NBOES and the NEA as indispensable parties. Additionally, OHA granted IPC’s request for attorney’s fees and costs.
On January 21, 2010, Mr. Nelson appealed the dismissal of his grievance to this Court. Because election disputes are to be expeditiously heard, this Court set an expedited briefing schedule on January 29, 2010 and invited any entity or person who voted in the initiative election to file an amicus curiae (friend of the court) brief. Six amici briefs were received. While this appeal was pending, the Council enacted the Foundation of the Dine, Diñé Law and Dine Government Act of 2009, which amended 1 N.N.C. §§ 200-207. Navajo Nation Council Resolution CF-11-10 (February 23, 2010). We extended our briefing deadlines and asked the parties and amici to file supplemental briefs as to the impact of this legislation on this appeal.
II
ISSUES
Mr. Nelson asserts that when OHA dismissed his grievance upon a motion to dismiss after a hearing was scheduled, it committed a number of reversible errors that are now issues before this Court.
The issues are: 1) whether OHA violated Mr. Nelson’s due process rights because the motion to dismiss was granted before Mr. Nelson filed a response; 2) whether OHA violated the Election Code and its rules and regulations when it dismissed the grievance after having scheduled a hearing; 3) whether dismissal on grounds that Mr. Nelson filed insufficient and untimely complaints and failed to join an indispensable party was error; and 4) whether OHA properly assessed attorney’s fees and costs against Mr. Nelson.
III
STANDARD OF REVIEW
The Court has jurisdiction over this matter pursuant to 11 N.N.C. § 341(A)(4) and 7 N.N.C. § 302. A decision of the Office of Hearings and Appeals is appealable to the Navajo Supreme Court within 10 calendar days following the election. 11 N.N.C. § 408(F)(1). When “addressing the legal interpretations of ... administrative bodies,” this Court applies “a de novo standard of review.” Begay v. Navajo Nation Election Admin., 8 Nav. R. 241, 250, 4 Am. Tribal Law 604 (Nav.2002) (citing Morris v. Navajo Board of Election Supervisors, 7 Nav. R. 75, 78 (Nav.Sup.Ct.1993)). Whether OHA appropriately dismissed Mr. Nelson’s grievance is a question of law.
IV
RESOLUTION CJA-08-10
During our review of this appeal, the Council amended 1 N.N.C. §§ 200-207 by passing Resolution CJA-08-10, the Foundation of the, Diñé, Diñé Law and Dine Government Act of 2009 (enacted by Resolution CF-11-10 overriding the President’s veto, February 23, 2010). We asked for supplemental briefs on the application of this law on this matter and on Shirley v. Morgan, No. SC-CV-02-10,-Am. Tribal Law-, 2010 WL 2163198 (Nav. May 28, 2010), wdiich was also pending.
We addressed the validity of CJA-08-10 in Morgan, finding the law invalid for several reasons. It purports to enact “Fundamental Laws” and includes man-made laws within Fundamental Laws, both of which the Council may not do. Our Fundamental Laws are the immutable founda *413 tional laws of the Navajo Nation and may only be acknowledged, not enacted, by the Council it purports to insulate itself from judicial review, which is an abridgement of the principle of checks and balances. It was enacted with insufficient findings in an atmosphere of governmental division and following a number of court decisions regarding governmental reform to which the Council had publicly voiced dissatisfaction, leading to reasonable speculation that its purpose was not legitimate. Finally, it violates the principle of ííshjání ádoolniíl, mandating that laws be clear so that they may be understood. Id., - Am. Tribal Law at-, 2010 WL 2163198, slip op. at 10-16.
As the law is invalid, it wall have no application to this case. This Court thanks the parties and amid for their careful consideration of the application of this law in their briefs in both cases.
V
DUE PROCESS UNDER THE ELECTION CODE
The Navajo Nation Bill of Rights provides that no person shall be deprived of life, liberty or property without due process of law. 1 N.N.C. § 3. However, a statutory scheme can be the source of due process rights. In re Removal of Katenay, 6 Nav. R. 81, 85 (Nav.Sup.Ct.1989). Because this is a challenge to an initiative election, Mr. Nelson’s due process rights as a challenger stem from the Election Code at 11 N.N.C. § 408(F) which provides:
F. Appeal of disputed elections.
1.A disputed election shall be appealed in writing within 10 calendar days following the election to the Office of Hearings and Appeals by an eligible registered voter who voted in the referendum/initiative election.
2. The Office of Hearings and Appeals shall issue rules and regulations for the determination of how such disputes shall be handled, and shall, pursuant to such rules and regulations, issue a decision upholding or vacating the disputed election.
3. A decision of the Office of Hearings and Appeals sustaining or vacating a disputed election may be appealed within 10 calendar days to the Supreme Court of the Navajo Nation. The scope of review is limited to whether the Office of Hearings and Appeals’ decision is sustained by sufficient evidence on the record.
Administrative Election Code complaints and hearings procedure is set forth at 11 N.N.C. § 341, which prorides:
A. The Office of Hearings and Appeals shall have the authority to implement procedures in resolving disputes pertaining to elections as follows:
1. Within 10 days of the incident complained of or the election, the complaining person must file with the Office of Hearings and Appeals a written complaint setting forth the reasons why he or she believes the Election Code has not been complied with. If, on its face, the compliant is insufficient under the Election Code, the complaint shall be dismissed by the Office of Hearings and Appeals.
2. If the complaint is not dismissed, the Office of Hearings and Appeals shall conduct a hearing within 15 days thereafter to determine if the allegations in the complaint are true and are supported by the law. At the hearing, the complainant and respondent may appear in person or through legal counsel. Except otherwise provided by law, the complainant shall have the burden of *414 proving the allegations contained, in the statement of dispute by clear and convincing evidence.
3. The Office of Hearings and Appeals shall issue a written determination within 10 days after the hearing on each complaint. At the conclusion of a hearing, the Office of Hearings and Appeals may issue a preliminary oral determination or request briefs from the parties by a specified date.
4. A party who wishes to appeal from a decision of the Office of Hearings and Appeals must file a Notice of Appeal with the Supreme Court of the Navajo Nation within 10 days after the decision is made. Review by the Supreme Court shall be limited to whether or not the decision of the Office of Hearings and Appeals is sustained by sufficient evidence on the record.

A. Sufficiency of the Complaint

The issue is whether OHA’s finding that Mr. Nelson’s complaint was insufficient on its face was proper as a matter of law.
11 N.N.C. § 341(A)(1), above, authorizes OHA to dismiss a complaint that is insufficient on its face under the Election Code.[4] The provision permits a summary dismissal. We have said that the “procedures established for resolution of election contests and disputes were not intended to be discretionary with the Board, The Tribal Council, for reasons of due process and speeding resolutions of election contests and disputes, intended that these procedures be followed.” Mustach v. Navajo Board of Election Supervisors, 5 Nav. R. 115, 118 (Nav.Sup.Ct.1987). Summary dismissals are needed for many reasons, including to protect the validity of the election, to avoid undue delay, and to avoid costly challenges. Navajo election law requires a hearing only if the statement is not dismissed for insufficiency. Brown v. Nav. Bd. Of Elec. Supervisors, 5 Nav. R. 139 (Nav.Sup.Ct.1987) (emphasis added). OHA has no choice but to dismiss an insufficient complaint under the present rules.
Mr. Nelson filed his grievance against the Initiative Petition Committee and President Shirley (IPC). IPC claimed that Mr. Nelson’s complaints do not address anything that IPC should have done or failed to do, and we agree. It appears that not only was an indispensible party not joined, Mr. Nelson filed his grievance against the wrong party.
IPC claimed that the NBOES set the Special Election and ballot language complained of; and that the NEA conducted the Special Election on December 15, 2009 and is responsible for the lack of police presence and turning away voters from the polls who had not voted in the previous election. OHA agreed with IPC that the NBOES and the NEA, and not IPC, are required to be named by Mr. Nelson to address the specific complaints.
Mr. Nelson claims that OHA had the authority to join the absent parties and that it failed to do so. An indispensible party is “fa] party who, having interests that would inevitably be affected by a court’s judgment, must be included in the case.” Black’s Law Dictionary 1232 (8th ed.2009). A Navajo Nation judge has the power to join an indispensible party. See Nav. R.Civ. P. Rule 19. However, Mr. Nelson does not dispute that OHA does not operate according to court rules and lacks the discretionary powers and author *415 ity to issue orders of a trial judge. Oral argument, April 20, 2010. Relevant to this case, OHA lacks any authority to compel the joinder of an indispensible party or return an insufficient petition for cure via amendment. If an indispensible party has not been joined, OHA would have no choice but to dismiss.
OHA, an administrative hearing body of limited jurisdiction and authority, has no express authority by statute or rales to join an indispensible party. The Election Code does not authorize an order of join-der by OHA. We reject Mr. Nelson’s argument because OHA’s authority is limited to the statutory scope of its authority and its promulgated hearing rules and regulations.
OHA’s dismissal on this ground is affirmed both for reasons that indispensible parties were not included in the grievance, and for reasons that the grievance was filed against the wrong party, did not address anything that IPC should have done or tailed to do, and therefore IPC was in no position to defend alleged wrongs. As the dismissal of the grievance on this ground alone is proper, it is unnecessary for us to review the additional grounds for dismissal set forth by OHA.

B. Summary Dismissal After Scheduling a Hearing

Mr. Nelson asserts that 11 N.N.C. § 314(A)(1) prohibits OHA from summarily dismissing a matter after a hearing has been scheduled. We read 11 N.N.C. § 314(A)(1) differently than Mr. Nelson and find no such prohibition. The provision requires OHA to dismiss an insufficient complaint. If not dismissed, the provision requires that a hearing be conducted. We find that 11 N.N.C. § 314(A)(1) does not prohibit OHA from summarily dismissing a matter at any time prior to the conduct of a hearing. OHA’s dismissal authority is not affected in any way by merely having scheduled a hearing.

C. Notice and Opportunity to Respond

Mr. Nelson asserts that OHA should have given him an opportunity to respond to IPC’s motion before issuing a dismissal order. We have held that procedural due process requires individuals to have adequate notice and an opportunity to be heard. Yazza v. Smith, 8 Nav. R, 191, 194, 3 Am. Tribal Law 528 (Navajo 2001). However, we further recognize the statutory limitations on OHA’s authority to issue additional orders or otherwise cure a complaint that is insufficient on its face as a matter of law, which has a substantial bearing on how fundamentally proper proceedings are conducted by that office.
IPC had moved for dismissal on issues of law, claiming that indispensible parties were not joined and that Mr. Nelson’s complaints do not address anything that IPC should have done or failed to do; OHA lacked statutory authority to consider certain portions of the complaint, which are not based on violations of the Election Code; and other challenges are untimely as they failed to meet statutory challenge deadlines. We have held that dismissal of Mr. Nelson’s grievance was proper as in-dispensible parties were not joined, and the grievance was even filed against the wrong party. We find that summary dismissal following notice was within the statutory authority of OHA.
Under the statutory scheme of the Election Code, OHA is not charged to hear defenses, factual or otherwise, against insufficiency. Its choices are limited to either dismissing an insufficient complaint or conducting a hearing when a complaint is sufficient. While we strongly believe that the limitations on OHA’s powers and authority should be expanded to permit the *416 hearing officer to cure insufficient complaints, and additionally, to give the hearing officer joinder authority, requiring that the powers and authority of OHA be expanded is beyond the checks and balance authority of this Court. In any case, issues raised by Mr. Nelson are of great relevance to the Navajo People and must be addressed by this Court on the basis of Mr. Nelson’s and other briefs submitted, in order to reach finality in this matter.
VI
ADDITIONAL ISSUES
In their briefs, IPC and Amici have asked this Court to resolve all issues concerning the Reduction in Council Initiative and provide finality for the Navajo People. IPC and Amici have asked this Court to issue all necessary opinions so that finality for the Navajo People as a whole may be achieved and the will of the People may be enforced. There are issues raised by Mr. Nelson in his grievance that this Court believes necessary to clarify and address.
Mr. Nelson has argued that the plain language of the 2 N.N.C. § 102(A) does not allow a change in the fundamental character of the Navajo Government, like the size of Council, “unless approved by majority vote of all registered voters in all -precincts” (Emphasis added.) Mr. Nelson has asserted that a change in the size of the Council can be achieved only with the approval of a “majority of all registered voters in all precincts ” pursuant to 2 N.N.C. § 102(A)(emphases added). Mr. Nelson argues that the 25,206 votes in favor and 16,166 votes against in the Reduction in Council Initiative does not meet this requirement and, therefore, the Reduction in Council Initiative did not pass. Mr. Nelson further argues in his grievance that the timelines for a reapportionment plan outlined in the Initiatives were all expired at the time of the Special Election on December 15, 2009.
While it has been a long-standing practice of this Court not to issue advisory opinions based on issues not before us, we acknowledged in Morgan, No. SC-CV-02-10, —- Am. Tribal Law --, 2010 WL 2163198 (Navajo May 28, 2010) the public welfare may sometimes require that this Court step in and address matters related to a present suit in order to forestall future injury and large costs in an imminent tutee suit. In Morgan, we held that the courts may issue clarifying opinions within the following limiting principles: (a) a clarifying opinion may be issued sua sponte or at the request of a party; (b) the opinion may be made only in connection with a present suit for declaratory or injunctive relief, (c) there is an allegation of future injury; (d) the clarifying opinion is needed in order that finality may be achieved in the matter before us; and (e) there is reasonable apprehension of an imminent suit in which large costs may be incurred and which impacts the public welfare. Id., - Am. Tribal Law at -, 2010 WL 2163198, slip op. at 29. We apply the test in Morgan here to see if a clarifying opinion is warranted.
It is apparent to this Court that issues surrounding the Reduction in Council Initiative must be addressed in order for the Navajo People to achieve finality. Applying the Morgan test, we find that (a) Ap-pellees and amici have asked this Court for a clarifying opinion; (b) the issues we are asked to resolve are in connection with this present suit for declaratory judgment; (c) if we fail to issue a clarifying opinion, the legitimacy of the Reduction in Council Initiative and other such initiatives will not be settled, with the result that the Navajo Nation political process may be crippled or suspended; if we don’t provide finality on an issue of such governmental importance, *417 animosity and conflict will likely continue in some other form and at the expense and well-being of the People; and (d) there is a very high likelihood of an imminent suit on issues related to the Reduction in Council Initiative, in which large costs will be incurred, and which, without question, will have impact on the public welfare.
The Morgan factors having been met, this Court may issue a clarifying opinion in this matter to resolve all issues surrounding the Reduction in Council Initiative so that finality will be achieved.
A. 2 N.N.C. § 102(A )
It would not be possible for NEA to certify any election results without determining the meaning and force of 2 N.N.C. § 102(A), which sets a minimum bar for the voting public to cross before the size of the Council may be changed. We therefore address 2 N.N.C. § 102(A) out of necessity given its great public importance in resolving the challenge of the Reduction in Council Initiative election and the power of the Navajo people to reorganize its government.
The plain language of 2 N.N.C. § 102(A) requires that the size of the Council can be changed by a “majority vote of all registered voters in all precincts.” However, a plain reading negates the complexities found within our Fundamental Laws which provide for a reading of the statute as understood within the context of the Navajo Nation. In re Appeal of Lee, No. SC-CV-32-06, 6 Am. Tribal Law 788, 792 (Navajo August 11, 2006). The Council’s ac-knowledgement of Dine bi beenahaz ’áanii provides guidance on the subject of leadership and the manner in which traditional law has established the People’s right and freedom to choose their leaders. 1 N.N.C. § 203(A). We have previously stated In the Matter of Two Initiative Petitions Filed by Navajo Nation President Joe Shirley, Jr., No. SC-CV-41-08, 7 Am. Tribal Law 628 (Navajo July 18, 2008) that the Navajo People have the inherent authority reserved to them to enact laws. The People’s laws are superior to the statutory laws enacted by the Council, and the referendum/initiative processes are modern acknowledgments of this authority. Id.
We have said that the Navajo Nation Council deferred to the Navajo People to make amendments to Section 102(A) of Title II of the Navajo Nation Code, and may not amend it independently. See Id. We previously held in Morgan that “the Council through the recitals of the Resolution CD-68-89 made a solemn compact with the People that the structure will be temporary and left it up to the People to choose the final structure of government.” Id., supra at 26. Affirming the power of the People to choose their form of government, we stated:
The recitals in Resolution CD-68-89 operate as a promise. Through the Title II Amendments, the Council acted to stabilize Navajo Nation government in face of corruption and chartered a course for further reform and enhancements. The Council recognized that the power over the structure of the Navajo government “is ultimately in the hands of the People and it will look to the People to guide it.”
Id., citing In re Two Initiative Petitions Filed by President Joe Shirley, Jr., No. SC-CV-41-08, 7 Am. Tribal Law 628, 633 (Navajo July 18, 2008).
According to the Navajo Nation Attorney General (AG), the purpose of any limiting language in the Title II amendments was never intended to bind the hands of the People, but to bind the hands of future Councils. AG-02-08, April 29, 2008, p. 2-J (part of the purpose of the procedure component was to limit future Councils *418 from changing the purpose or reducing/increasing the composition of the Council).
An initiative may pass by simple majority, 11 N.N.C. § 406(A). The Initiative process for enactment of laws stems from the participatory democracy of the Diñé, and the supermajority requirements of 2 N.N.C. § 102(A) do not apply to the certification of initiatives approved by the Diñé for the same reason that the Council approved an alternative majority requirement under 11 N.N.C. § 406(A) (vote required). See id., at 6. The exercise of an initiative will be about major national concerns. Initiatives are costly, takes considerable effort and time. The People will be careful in proposing legislation for the benefit of the People. The People have a fundamental right to choose their leaders and leaders have the obligation to ensure those rights. We agree with the AG that, “in the absence of a clear indication by the Navajo Nation Council that the procedure component of Section 102(A) applies to laws and initiatives initiated by petition of the Diñé, the answer cannot be yes” that the procedure component is binding on initiatives passed by the Diñé. Id. The initiative/referendum process is intended to give the Diñé a voice in their government, and the initiative/referendum law must be read liberally to achieve the purpose of the legislation and not to frustrate the intention to give a voice to the Diñé in their government. Id. at 7, citing Russell v. Donaldson, 3 Nav. R. 209, 213 (W.R.Dist.Ct.1982). The initiative/referendum procedures are intended to enable the Navajo People to establish their own form of government and amend Title 2 as necessary. Id. Initiatives are remedial measures, used by the People to enact legislation in the face of an unresponsive legislative branch. As we stated in Morgan,
The Council has a duty to act on the People’s recommendation. If the Council refuses to act, it is not inappropriate for other governmental entities to press the People’s interests and hold the Council to its promises made in Resolution CD-68-89.
Morgan, supra, — Am. Tribal Law ——, 2010 WL 2163198, slip op. at 28.
Section 102(A) of Title II of the Navajo Nation Code provides:
“The Navajo Nation Council shall be the governing body of the Navajo Nation and shall consist of 88 delegates. This § 102(A) shall not be amended unless approved by majority vote of all registered voters in all precincts.”
(Emphasis added).
The super majority requirement in 2 N.N.C. § 102 is not merely a supermajority, it is an extraordinary majority impossible to be attained judging from voter turnout in any previous Navajo Nation election, plus reading the provision as requiring unanimity in all precincts is bound never to be achieved in modern voting. The outcome of this impossible requirement for unanimity in the matter before us is individuals contesting the will of the majority at the urging of, and financed by, the Council.
Such an extraordinary statutory limitation cannot be used to circumscribe the People’s will. While the Council may limit itself in creating laws, it cannot limit the Diñé when they are attempting to address the structure of their governing system.
In the context of the Navajo Nation, this Court reads “all” in Section 102(A) as a term of inclusion that does not require unanimity in each and every precinct. We read the provision as requiring approval by a majority vote in “all precincts”—the grammatical equivalent of “across all precincts,” “within all precincts,” or “throughout all precincts.”
*419 The term “Registered Voter” is not defined in the Navajo Nation Code. However, “Voter” is defined as “a voter who is registered on the Navajo Nation roll of registered voters.” 11 N.N.C. § 2(LL) (emphasis added) (definition pertains to qualifications necessary for voting). We read the “registered voter” requirement in Section 102(A) against the promises of the Council in Resolution CD-68-89 and the above definition to a majority of all registered voters who have actually voted. Applying the two components as to the meaning of “all registered voters” and “all voters,” we hold that the plain language of 2 N.N.C. § 102(A) requires that amendments be approved by a simple majority vote of all registered voters throughout the Navajo Nation who ha,ve voted in that election. Unanimity and an extraordinary majority are not required.
B. Certification of the Results of the December 15, 2009 Initiative Election
We find that passage of the Reduction in Council Initiative by the People through an Initiative Election on December 15, 2009 is valid and proper. The NBOES shall immediately certify the above election results.
C. Reapportionment Plan
The Reduction in Council Initiative mandated a reapportionment plan consistent with the Council reduction. The language of the Reduction in Council Initiative required that a reapportionment plan be presented to the Council no later than August 15, 2009. In the alternative, the initiative stated that if the Council does not approve a reapportionment plan, the President of the Navajo Nation will develop and approve the plans no later than October 30, 2009. However, no reapportionment plan was yet approved by the date of the special election, December 15, 2009. Mr. Nelson seeks to nullify the Initiative Election results because these timelines for the reapportionment plan were not met. The argument does not. hold water.
Notwithstanding the Initiative’s clear requirement, we take judicial notice that the OHA delayed up to six months to hold an evidentiary hearing on the sufficiency of the Initiative Petitions until finally, on May 8, 2009, this Court issued a Writ of Superintending Control ordering that a hearing be held within a timeline. In the Matter of the Navajo Nation Election Administration's Determination of Insufficiency Regarding Two Initiative Petitions Filed by the Navajo Nation President Dr. Joe Shirley, Jr., No. SC-CV-24-09 (Nav.Sup.Ct. May 8, 2009). When the hearing officer found the petitions were sufficient, challenges to sufficiency continued through July 30, 2009 through the NEA with the assistance of legal advisors to the Council. Throughout this period, the Navajo Nation Council took no steps toward developing and approving a reapportionment plan, and in October, 2009, suspended the President from his duties by placing him on administrative leave before the October reapportionment plan deadline. We have previously invalidated the administrative leave resolution due to violations of Navajo Nation enactment procedures. See Morgan, supra. We find that the events leading up to the Special Election show that the reapportionment plan that was expressed through the Initiative language failed to be timely approved because of inaction by the NBOES, and action and inaction by the Council, which has challenged this Initiative, or assisted in challenges, at every step, even unlawfully removing the President from his duties at the very moment an alternative plan from the President was due.
*420 This Court has stated that the Council possesses no independent authority to alter or abolish its clear deference to the Navajo People. In re Appeal of Lee, No. SC-CV-32-06, slip op. at 6-7 (Nav.Sup.Ct. August 11, 2006). We affirm today that the Council may not use its power to frustrate the will of the People.
The development of the reapportionment plan is still a mandate. The NBOES and the Council were given ample opportunity to develop and approve the plan but foiled to do so. We find that the remaining two months is woefully inadequate to develop, debate and approve a reapportionment plan from the many that will be offered. The People’s government must comply with the mandate issued by its People. The People do not want any more delays and uncertainty. In accordance with the new law, the President shall present a reapportionment plan that has been discussed at community meetings by June 11, 2010 and the NBOES shall approve the reapportionment plan by June 18, 2010.
D. 2010 General Election
To ensure compliance with the People’s mandate, we provide clarification as to the effect of the new law enacted by the Navajo People through the Reduction in Council Initiative on December 15, 2009. The initiative amended 2 N.N.C. § 102(A) to state that the Council shall consist of 24 delegates, not 88. The NBOES, therefore, shall immediately proceed with the 2010 election of a 24 member Navajo Nation Council. Twenty-four delegates shall be seated on January 11, 2011.
The NBOES and the NEA shall proceed with the 2010 election in accordance with this decision. We have hurried this opinion as the timelines for the 2010 election are drawing near, and the present authority of the 21st Navajo Nation Council will expire on January 11, 2011. While normally the Court does not directly concern itself with the operation of elections, it cannot be denied that numerous challenges and governmental delays in the present matter necessitates the need to impose deadlines to ensure that the People’s mandate is implemented. Only two months remain before the August 3rd primary and deadlines need to be adjusted to comply with the will of the People. The NEA shall therefore resume the candidate filing process that began on February 4, 2010. Candidate filing shall conclude on June 11, 2010. Certification of the candidacy by the NEA shall be completed no later than July 12, 2010 to permit candidates with time to campaign. Appeals, if any, shall be handled expeditiously. The deadlines for printing of ballots and the distribution of absentee ballots will have to be adjusted and we leave that to the NEA.
E. 11 N.N.C. § 409(C)(2)
11 N.N.C. § 409(C)(2), which permits the Council to override a Navajo Nation-wide referendum or initiative election by three-quarters (3/4) vote of the full membership of the Council, is declared invalid. The Council may not interfere with the People’s choice. We take special note that the People, through the Government Reform Development Project, took substantial steps to choose their government system in 2002, including the following proposed amendment to 2 N.N.C. § 102(B) and (C) but were ignored by the Council:
§ 102 Powers; Composition
[[Image here]]
B. All powers not delegated authorized, to the Navajo Nation Council by Title 2 are reserved to the Navajo.Nation-Council people.
G-. The Navajo Nation Council shall superase, all powers not delegated.

*421
Navajo Nation Council, Work Session, Navajo Nation Statutory Reform Convention Proposed Amendments to Title 2 and 11 (October, 2002).

Promises were made in Resolution CD-68-89 enacting the Title II Amendments that apply to the whole of the Navajo Nation Code. We have said that Title II is the Navajo Nation organic law. Statutes that conflict with the promises made in connection with Title II cannot stand. Words are sacred, and the Navajo People have the right to keep the Navajo Nation Council to the whole of its words, not simply a portion thereof Morgan, supra at 25, citing Wagner v. Tsosie, No. SC-CV-01-07, 7 Am. Tribal Law 528, 533-34 (Navajo May 14, 2007).
F. Future Amendments to 2 N.N.C. § 102(A)
This Court has dealt with the statutory interpretation of 2 N.N.C. § 102(A). In re Two Initiative Petitions, No. SC-CV-41-08, 7 Am. Tribal Law 628 (Navajo July 18, 2008). We affirmed the long held premise that the People have the inherent right to make laws for the good of the community; the People’s authority to make laws is not delegated to them by the Council. Id. The referendum and initiative processes are modern acknowledgments of this authority. Id. The Council has “clearly deferred the power to approve all amendments to Section 102(A) to the Navajo People.” Id., No. SC-CV-M1-08, 7 Am. Tribal Law at 632-33 (Navajo July 18, 2008) (emphasis added). We hold the Council to its promise in Resolution CD-68-89 that the People have the sole authority to change the size of Council. We have stated that the Council may not independently amend Title II; it must defer to the will of the People.
G. Committee Restructure
There is also a mandate as to the development of the standing committees and the legislative branch reorganization. The initiative provides that upon approval of the reapportionment, the Council will begin standing committee and legislative branch reorganization consistent with the Council reduction. The reorganization amendments were to be developed and approved by the Council no later than August 15, 2009. Considerable time, however, was lost because of this litigation and the delays of government. Although the new law permits the President to develop and approve the standing committees and legislative branch reorganization plan in the event that the Council is unable to do so by August 15, 2009, the reorganization is essentially a political and management decision that should be left to the legislative branch. The 22nd Navajo Nation Council shall prioritize, develop and approve the reorganization plans as an initial order of business.
VII
ATTORNEY’S FEES AND COSTS
OHA assessed attorney’s fees and costs against Mr. Nelson. Mr. Nelson asserts the award of attorney’s fees by OHA was improper because neither the Election Code, nor special circumstances exist to justify the award. Furthermore, Mr. Nelson has asked that he be awarded attorney’s fees and costs should he prevail on appeal.
A. Award of Attorneys Fees By OHA
The Election Code does not provide for the award of attorney’s fees. In addition, OHA awarded attorney’s fees and costs with no explanation. OHA did not identify nor justify a recognized exception, *422 nor are there findings justifying any exception.
In the review of lower tribunal decisions, this Court has long recognized that each party is responsible for their own legal fees in litigation unless a recognized exception justifies otherwise. See Goldtooth v. Naa Tsis’ Aan Community School, No. SC-CV-12-06, 8 Am. Tribal Law 152 (Navajo April 16, 2009); Wirtz v. Black, No. SC-CV-09-06, 7 Am. Tribal Law 553 (Navajo August 7, 2007); Largo v. Gregory and, Cook, 7 Nav. R. 111 (Nav.Sup.Ct.1995); Brown v. Todacheney, 7 Nav. R. 37 (Nav.Sup.Ct.1992); Chavez v. Tome, 5 Nav. R. 183 (Nav.Sup.Ct.1987); John v. Herrick, 5 Nav. R. 129 (Nav.Sup.Ct.1987); Hall v. Arthur, 3 Nav. R. 35 (Nav.Ct.App.1980). Recognized exceptions include: where statute provides, when special circumstances exist (contempt proceedings, contractual agreements, divorce proceeding, abusive litigation practices, failure to obey discovery orders, etc.), and when pleadings are not submitted in good faith. In the award of attorney fees, the lower tribunal is required to state supporting facts that justify the award. Wirtz v. Black, No. SC-CV-09-06, 7 Am. Tribal Law 553 (Navajo August 7, 2007).
We hold that OHA’s decision to assess attorney fees and costs against Mr. Nelson is neither authorized by the Election Code nor justified as an exception. Therefore, we reverse OHA.
B. Attorneys Fees and Costs on Appeal
An award of attorney’s fees on appeal is within the discretion of this Court. In re Custody of C.L.M. and A.M., 7 Nav. R. 130, 134 (Nav.Sup.Ct.1995). There are four separate requests concerning fees and costs in the briefs presented to this Court.
i. Request of IPC
IPC does not ask for fees and costs for their appeal, but asked the Court to affirm OHA’s award of fees, which we cannot do for reasons stated above.
ii. Request of Mr. Nelson
Mr. Nelson has asked for fees and costs. Under any circumstances, fees and costs are normally awarded to the prevailing party. Because Mr. Nelson is not the prevailing party in this case, he is not entitled to such an award.
iii. Request of Amicus Hada‘a Sidi
Amicus Hada'a Sidi has urged the Court to address the legality of the Council’s $150,000 appropriation to fund Mr. Nelson’s grievance and appeal. On May 23, 2009, the day Mr. Nelson filed his statement of grievance to OHA challenging the outcome of the special initiative election, the Intergovernmental Relations Committee (IGR) of the Navajo Nation Council, chaired by Speaker Morgan, passed a resolution to allocate $150,000 to fund independent legal counsel for persons to contest the December 15, 2009 special election. Intergovernmental Relations Committee Resolution IGRD-2U8-09 (December 23, 2009). There is no dispute that the appropriation funded Mr. Nelson’s independent legal counsel in this appeal. As urged by Amicus Arthur, this Court will address the issue as to whether there was a misappropriation of public funds for private purposes.[5]
It is a fundamental principle of governance that public funds cannot be *423 used for private purposes, and this principle applies to funds of the Navajo Nation. See Halona v. MacDonald, 1 Nav. R. 341, 351 (S.R.Dist.Ct.1978). In Halona, the district court invalidated the Council’s appropriation of $70,000 in public funds for then Chairman Peter MacDonald’s private legal defense against federal corruption charges. Chairman MacDonald appealed the district court’s decision to the Navajo Court of Appeals[6]. The Court affirmed the district court’s decision and established that Council allocations are subject to judicial review. See Halona, v. MacDonald, 1 Nav. R. 189 (Nav.Ct.App.1978). The Court declared all monies spent by the Navajo Nation Council are monies of the Navajo People. The Court firmly held that the general treasury cannot be used for payment of private attorney’s fees and costs. Id.
This Court lacks sufficient information to issue an opinion as to the legality of the Council’s appropriation to Mr. Nelson at this time. The circumstances surrounding the appropriations require further development. For example, were the funds appropriated general or discretionary funds? While discretionary funds are still public treasury funds, the rules for their disbursement are not the same as those for General Fund disbursements. IGR’s appropriation of public funds to fond independent legal counsel of private individuals to openly challenge the December 15, 2009 special election is sufficiently complex that we must ask for supplemental briefing on this matter.
iv. Request of Amicus Eddie J. Arthur
Amicus Eddie J. Arthur has urged this Court to award him fees to “level the
playing field.” Referring to the $150,000 appropriated by the Council to fund Mr. Nelson’s grievance and subsequent appeal, Amicus Arthur asks for $15,000 and states that it is only fair, in his attempt to have his voice heard “defending the interests of the people,” that he should “receive a fraction of what has been spent to silence him.” Amicus Brief of Eddie J. A rthur at 32.
However, any award of lees to Amicus Mr. Arthur would come from Mr. Nelson, who is funded out of the Navajo Nation public treasury pursuant to Intergovernmental Relations Committee Resolution IGRD-248-09 (December 23, 2009). This Court must first explore the legality of this appropriation, and will be so doing at the urging of Amicus Hadad Sidi
We will inform the parties and amici as to the supplemental briefing schedule regarding the legality of the appropriation of public funds under Intergovernmental Relations Committee Resolution IGRD-2U8-09 (December 23, 2009), and will set a hearing at a later date. A separate decision will follow thereafter.
In closing, the Court urges the leaders of both branches along with the NBOES to demonstrate to the Navajo People that their government will comply with their mandate in an amicable manner consistent with the teachings of k’é. Dated this 28th day of May, 2010.

. The election at issue is an Initiative, not a Referendum. The former is placed on a ballot by a petition of registered voters, while the latter is referred to the people by the Navajo Nation Council. See 11 N.N.C. §§ 402-04.

. There is no challenge to the Line Item Veto Initiative; therefore, this Court, noting that all time periods for challenges have expired, presumes that the Line Item Veto Initiative is valid and the law enacted is effective.

. There has been no challenge to the Line Item Veto Initiative. However, the NBOES has yet to certify the election results for that initiative election as of the date of this opinion.

. At the April 20 hearing Mr. Nelson's counsel conceded that the hearing officer has statutory authority to summarily dismiss a grievance.

. The question of misappropriation of public funds by the Navajo Nation Council is not a non-justieiabie political question; the Navajo courts are fully able to measure the action taken against the existing law, and to determine whether the law has been violated, and when called upon to do so the court may not decline the obligation to do so. Halona v. *423 MacDonald, 1 Nav. R. 341, 351 (S.R.Dist.Ct. 1978) (affirmed by Halona v. MacDonald, 1 Nav. R. 189) (Nav.Ct.App.1978).

. Predecessor to the Navajo Nation Supreme Court.